United States District Court
Southern District of Texas
**ENTERED**
January 27, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RAQUEL SALDIVAR,<br>Plaintiff,<br><br>v.<br><br>DOUGLAS ALLEN COLLINS,<br>*Secretary of Veterans Affairs*,<br>*Department of Veterans Affairs,*<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:23-cv-076 |

| | | |
|---|---|---|
| RAQUEL SALDIVAR,<br>Plaintiff,<br><br>v.<br><br>DOUGLAS ALLEN COLLINS,<br>*Secretary of Veterans Affairs*,<br>*Department of Veterans Affairs,*<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:24-cv-118 |

**REPORT AND RECOMMENDATION**
**TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,**
**DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND**
**DISMISS PLAINTIFF'S CAUSE OF ACTION WITH PREJUDICE**

## I. Synopsis

Raquel Saldivar is an employee of the Department of Veterans Affairs. She brings employment discrimination claims under Title VII of the Civil Rights Act against the Department of Veterans Affairs. Ms. Saldivar claims sexual harassment in the form of unwanted touching to her arm and a crude gesture that created a hostile working environment. She reported the conduct to the Department and claims that thereafter she was punished for reporting the conduct through adverse employment actions.

Both Ms. Saldivar and the Department file for summary judgment on these claims. The issue before the Court is whether there exists a genuine issue of material fact to grant either party

summary judgment on Ms. Saldivar's claims she was sexually harassed to the point she had to work in a hostile environment and if, after reporting, the Department retaliated against her through adverse employment decisions.

This Court agrees with the Department that Ms. Saldivar cannot prevail on her employment discrimination claims and recommends summary judgment in favor of the Department of Veterans Affairs as to all of Saldivar's causes of action.

## II. Jurisdiction

Raquel Saldivar's ("Saldivar") claims against the Department of Veteran's Affairs ("VA") are based upon the federal employment discrimination statute, Title VII of the Civil Rights Act of 1964, pursuant to 42 U.S.C. §2000e, et seq. Because this civil action arises under the laws of the United States, the Court has federal subject matter jurisdiction under 28 U.S.C. § 1331.

## III. Venue

Saldivar alleges that at "all times relevant to this complaint, she worked as secretary to the Associate Director for Patient Care Services/Nurse Executive at the VA Medical Center in Harlingen, Texas." Dkt. No. 45, p. 3. Because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district, venue is proper in the United States District Court for the Brownsville Division of the Southern District of Texas under 28 U.S.C. 1391(b)(2).

## IV. Factual Background

The following facts are undisputed. Saldivar worked "as secretary to the Associate Director for Patient Care Services/Nurse Executive at the VA Medical Center in Harlingen, Texas" at all times relevant to this action. Dkt. No. 45, p. 3; Dkt. No. 46, p. 3. The managers at the "VA Harlingen" were Homero Martinez as the Medical Center Director; Charles Harpel, as the Assistant Director; Dr. Jennifer Wood as the Chief of Staff; Manuela Perales as the Nurse Executive. Dkt. No. 45, p. 3; Dkt. No. 46, p. 3. Saldivar's first-level supervisor was Jacqueline Benavidez, the Administrative Officer for the Patient Care Services/Nurse Executive; her second-line supervisor was Perales. Dkt. No. 45, p. 3; Dkt. No. 46, p. 3. Dr. Jennifer Wood supervised Health Systems Specialist Jesse Sanchez. Dkt. No. 45, p. 3; Dkt. No. 46, p. 3.

At the workplace, Sanchez's office space is outside of Dr. Wood's office space. Dkt. No. 45, p. 3; Dkt. No. 46, p. 3. Saldivar's work area is a set of four partitioned desks, grouped together, outside the offices of Martinez, Harpel, Dr. Wood, and Perales. Dkt. No. 45, p. 3; Dkt. No. 46, p. 3.

**A. Saldivar's alleged incidents of harassment.**

The following facts are disputed. Saldivar alleges that on September 30, 2021, Sanchez approached her and ran his finger down her arm "in a sensual way." Dkt. No. 45, p. 4. Saldivar told Sanchez not to touch her. *Id.* Saldivar alleges this was neither the first time Sachez had touched her nor the first time she had told Sanchez to refrain from touching her. *Id.* Saldivar alleges that on October 1, 2021, she wore latex gloves to prepare to distribute facial masks to staff at the workplace. Dkt. No. 45, p. 4; Dkt. No. 47-3, Dep. Saldivar, pp. 3-4. While wearing the gloves, allegedly Sanchez saw her, turned around, bent over, and pretended to pull his pants down. Dkt. No. 45, p. 4; Dep. Saldivar, pp. 3-4. He then said, "I'm ready." Dkt. No. 45, p. 4; Dep. Saldivar, pp. 3-4.

**B. Report of Contact ("ROC")**

The following facts are undisputed. On October 12, 2021, Saldivar submitted a "Report of Contact" with Benavides, her first-level supervisor. Dkt. No. 45, p. 5; Dkt. No. 47-6 (Pl.'s Ex.). In the report, Saldivar complained of Sanchez touching her body in the past and of Sanchez's comments concerning her allegation related to the latex gloves. Dkt. No. 45, p. 5; Dkt. No. 47-6 (Pl.'s Ex.); Dkt. No. 46, p. 3. In the report, Saldivar writes that she does not "recall the dates for every occasion" but refers to the "most recent incident of Jesse touching my arm" as occurring on September 30, 2021. Dkt. No. 47-6 (Pl.'s Ex.). This ROC was later forwarded to Dr. Wood, the Chief of Staff. Dkt. No. 45, p. 5; Dkt. No. 46, p. 3; Dkt. No. 49-4 (Govt. Ex. 4, Dep. Wood).

Dr. Wood had a discussion with Sanchez on October 18, 2021, a few days after receiving the Report of Contact, and sent Sanchez an email memorializing this discussion on October 20, 2021. Dkt. No. 45, p. 5; Dkt. No. 46, p. 4. Sanchez admitted both he and Sanchez laughed at his "I'm ready" comment. Dkt. No. 45, p. 5; Dkt. No. 46, p. 4. The next day, Saldivar sent an email to both Benavidez and Wood stating that she felt threatened and uncomfortable around Sanchez. Dkt. No. 45, p. 5; Dkt. No. 46, p. 4. Dr. Wood assigned a Patient Safety Clinician, Esmeralda Martinez, to conduct a "Fact Finding" into Saldivar's ROC. Dkt. No. 45, p. 5; Dkt. No. 46, p. 4.

On November 10, 2021, Martinez completed and submitted a "Fact Finding Report Form" to Dr. Wood. Dkt. No. 45, p. 7; Dkt. No. 46, p. 4. Martinez determined that Saldivar's allegations against Sanchez were unsubstantiated. Dkt. No. 45, p. 7; Dkt. No. 46, p. 4. On November 12, 2021, Dr. Wood informed Sanchez that Saldivar's allegations against him were determined to be unfounded. Dkt. No. 45, p. 7; Dkt. No. 46, p. 5. On November 19, 2021, a week later, Benavidez

informed Saldivar that her allegations against Sanchez were determined to be unfounded. Dkt. No. 45, p. 7; Dkt. No. 46, p. 5.

**C. Letter of Expectation ("LOE") and Application Denials**

The following facts are undisputed. Benavidez issued Saldivar a Letter of Expectation, finding she engaged in hostile behavior and asking her to refrain from such conduct. Dkt. No. 45, p. 7; Dkt. No. 46, p. 5; Dkt. No. 47-18. On December 7, 2021, Saldivar received notice that her application for the position of Medical Administration Specialist was declined. Dkt. No. 45, p. 8. About a week after her application was denied, Saldivar sent an email to Martinez, the Medical Center Director. Dkt. No. 45, p. 8; Dkt. No. 46, p. 5. In this email, Saldivar wrote that she believed the "reprimand," the Letter of Expectation, constituted "reprisal" for her complaining of Sanchez's conduct. Dkt. No. 45, p. 8. A few days later, on December 17, 2021, Saldivar received a new Letter of Expectation removing the language regarding hostile behavior. Dkt. No. 45, p. 8; Dkt. No. 46, p. 5.

On January 5, 2022, Saldivar sent a similar "reprisal" email to Director Martinez, concerning her opinion on receiving an additional Letter of Expectation. Dkt. No. 45, p. 8; Dkt. No. 46, p. 5. On January 6, 2022, Director Martinez responded to Saldivar that he was "confident that the allegations were appropriately investigated." Dkt. No. 45, p. 8; Dkt. No. 46, p. 5.

On February 8, 2022, Saldivar received notice that her application for the position of Administrative Officer, Police Service, was declined. Dkt. No. 45, p. 9; Dkt. No. 46, p. 5. On February 28, 2022, Saldivar received notice that her application for the position of Supervisory Medical Support Assistant was declined. Dkt. No. 45, p. 9; Dkt. No. 46, p. 5. On March 8, 2022, Saldivar told Benavidez, her first-level supervisor, that Sanchez's presence made her anxious and nervous. Dkt. No. 45, p. 9; Dkt. No. 46, p. 6. On that same day, Benavidez sent Saldivar an email approved by an Employee and Labor Relations Specialist. Dkt. No. 45, p. 9; Dkt. No. 46, p. 6. The email stated, among other things, that Saldivar's request to move work areas "resolves itself to a matter of professionalism in the workplace . . . Your assignment includes working with all staff in a professional matter[.]" Dkt. No. 45, p. 9; Dkt. No. 46, p. 6.

**D. Formal EEO Complaint and Performance Evaluation**

The following facts are undisputed. On April 26, 2022, Saldivar filed a formal Complaint of Employment Discrimination. Dkt. No. 47-26. She alleged that the VA discriminated against her on the basis of sex, sexual harassment, and on the basis of creating a hostile work environment.

Dkt. No. 47-26.

On November 1, 2022, Benavides rates Saldivar's performance as "Fully Successful" on her annual performance evaluation. Dkt. No. 45, p. 10; Dkt. No. 46, p. 6. On January 20, 2023, Saldivar received notice that her application for GS-9 Administrative Officer Position was declined. Dkt. No. 45, p. 10; Dkt. No. 46, p. 6. Saldivar filed an additional EEO complaint during the EEO investigation on May 3, 2023. Dkt. No. 45, p. 11; Dkt. No. 46, p. 6. Saldivar alleges that "the Department subjected [her] to a hostile work environment based on reprisal for engaging in prior EEO activity – filing a complaint against Jesse Sanchez." Dkt. No. 45, p. 11; Dkt. No. 46, p. 6. Saldivar received a Final Agency Decision and a Right to File a Civil Action from the Department of Veterans Affairs, Office of Employment Discrimination Complaint Adjudication by May 10, 2023. Dkt. No. 45, p. 11; Dkt. No. 46, p. 6.

**E. Saldivar's Allegations on LOE, Application Denials, and Isolationism.**

The following facts are disputed. Saldivar alleges that she was devasted when she received the Letter of Expectation and was in disbelief that her allegations against Sanchez were determined to be unfounded. Dkt. No. 45, pp. 7-8. Saldivar alleges that applications for three positions were declined as a form of reprisal for her complaints about Sanchez's conduct. Dkt. No. 45, p. 9. Saldivar alleges that on March 18, 2022, management asked her to find her own coverage to participate in a career development program. Dkt. No. 45, p. 10. Saldivar alleges that on March 30, 2022, her application for a scholarship was denied "while all other applications were granted." *Id.*

Saldivar alleges that on April 26, 2022, management instructed her colleagues "not to speak with her or ask her questions." *Id.* Saldivar also alleges that Benavidez begins to communicate with her through email only, and she no longer receives feedback in person from Benavidez. *Id.* Saldivar alleges that on April 29, 2022, Benavidez, her supervisor, changed her position description "to include additional duties and less time to complete assignments." Dkt. No. 45, p. 10. Saldivar alleges that her mental and physical health suffered to the extent that she had to seek professional treatment because of both Sanchez's conduct and the VA's actions of reprisal. Dkt. No. 45, pp. 11-12.

**F. Procedural History**

On May 10, 2023, Saldivar initiated an action against Defendant Douglas Allen Collins, Secretary of Veterans Affairs, Department of Veterans Affairs ("VA") after receiving a Final

Agency Decision and a Right to File Civil Action form from the VA's Office of Employment Discrimination Complaint Adjudication based on her first EEO Complaint. Dkt. No. 45, p. 11; Dkt. No 46, p. 6. Saldivar alleges sexual harassment under Title VII, Hostile Work Environment Harassment, and Reprisal under Title VII. Dkt. No. 45, p. 11; Dkt. No 46, p. 6. On August 9, 2024, Saldivar initiated another action against the VA after receiving a Final Agency Decision and a Right to File Civil Action form the VA's Office of Employment Discrimination Complaint Adjudication based on her second EEO Complaint. Dkt. No. 45, p. 11; Dkt. No 46, p. 6. These two cases were consolidated on October 24, 2024, with the lead case number set as 1:23-cv-76. Dkt. No. 23.

In Saldivar's First Amended Complaint, she identifies the following three causes of action: Sexual Harassment Under Title VII, Hostile Work Environment Harassment, and Reprisal under Title VII. Dkt. No. 45, pp. 12-13. However, in her Motion for Summary Judgment, Saldivar identifies her three claims as Quid Pro Quo Harassment, Hostile Work Environment Harassment, and Reprisal, all pursuant to Title VII of the Civil Rights Act. Dkt. No. 47. Furthermore, in Saldivar's Response to the VA's Motion for Summary Judgment, Saldivar frames her claims as Quid Pro Quo Harassment, Hostile Work Environment Harassment, and Reprisal. Dkt. No. 54, p. 2.

On July 9, 2025, Saldivar filed her Motion for Summary Judgment. Dkt. No. 47. Saldivar moves for summary judgment only on the claims of Hostile Work Environment Harassment and Reprisal. Dkt. No. 47, p. 3.

Also on July 9, 2025, the VA filed their Motion for Summary Judgment. Dkt. No. 48. The VA moves for summary judgment in favor of the VA against all of Saldivar's employment discrimination claims. Dkt. No. 48, p. 13.

On September 3, 2025, the VA filed their response in opposition to Saldivar's Motion for Summary Judgment. Dkt. No. 52. The VA argues that Saldivar fails to establish a *prima facie* case as to all of her claims. *Id.*

Also, on September 3, 2025, Saldivar filed her Response to the VA's Motion for Summary Judgment. Dkt. No. 54. Saldivar agues the VA's Motion for Summary Judgment as to Hostile Work Environment and Reprisal should be denied because the VA's polices and actions show a lack of reasonable care by the VA and Saldivar did experience an adverse employment action. *Id.*

Now, the Court considers these cross motions for summary judgment. Dkt. Nos. 52 and 54.

## V. Summary Judgment Standard

Summary judgment is appropriate when the moving party establishes that there exists no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant "can show there's no material dispute if he demonstrates that the [non-movant] could not prevail even if each factual question were resolved in their favor." *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 950 (5th Cir. 2022). A "genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

If the non-movant would bear the burden of proof at trial, the moving party may satisfy its summary judgment burden "by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Ortega Garcia v. U.S.*, 986 F.3d 513, 533 (5th Cir. 2021). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Id.* "A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

"All facts must be viewed in the light most favorable to the nonmovant and all justifiable inferences must be drawn in his favor." *Crane v. City of Arlington, Texas*, 50 F.4th 453, 461 (5th Cir. 2022). Thus, factual controversies are resolved in favor of the non-movant, "but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 321 (5th Cir. 2021). In the "absence of any proof," the court cannot and will not assume that the non-moving party could or would prove the necessary facts. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017). Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." *Chacon v. Copeland*, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted)).

"On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

## VI. Analysis

Both Saldivar and the VA filed motions for summary judgment on Saldivar's operative complaint, her First Amended Complaint. Dkt. No. 45. Saldivar moves for summary judgment on her hostile work environment and reprisal claims. Dkt. No. 47. The VA moves for summary judgment on Saldivar's hostile work environment claim stemming from sexual harassment and her retaliation claim. Dkt. No. 48.

### a. Saldivar's Cause of Action for Sexual Harassment

Saldivar puts forth in her First Amended Complaint a claim of "Count 1: Sexual Harassment under Title VII." Dkt. No. 45, p. 12. She pleads a cause action for sexual harassment in the form of unwanted verbal and physical conduct based on her sex, a protected class, so severe it affected her employment. *Id.* She pleads the elements of a hostile work environment based on sexual harassment. Dkt. No. 45, pp. 12-13.

In her motion for summary judgment, Saldivar claims her sexual harassment was at the hands of a supervisor for which she suffered a tangible employment action, titling it "*quid pro quo* sexual harassment." Dkt. No. 47, p. 5, ¶ 11. She does not move for summary judgment on her sexual harassment claim under the *quid pro quo* theory. Dkt. No 47, p. 6, ¶ 13. Instead, Saldivar states she moves for summary judgment on her hostile work environment and reprisal claims. *Id.*

The VA moves for summary judgment on Saldivar's sexual harassment claim as a hostile work environment claim based on sexual harassment, as plead in her operative complaint. Dkt. No. 48, pp. 21-28. In her response to the VA's motion for summary judgment, Saldivar asserts again that her three claims in her first amended complaint are "Quid Pro Quo Harassment; Hostile Work Environment Harassment; and Reprisal." Dkt. No. 54, p. 2. However, in her First Amended Complaint, the controlling and operative complaint for which this Court considers the VA's motion for summary judgment on Saldivar's sexual harassment claim, Saldivar alleges no facts of *quid pro quo* harassment, stating her supervisors as Homero Martienz, Manuel Perales and Jacqueline Benavidez. Dkt. 45, p. 12, ¶¶ 6-9. Jesse Sanchez, alleged to have sexually harassed Saldivar, is supervised by Dr. Jennifer Wood. *Id.* at ¶ 10.

Title VII prohibits sexual harassment in the workplace. *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 220 (5th Cir. 2023). A plaintiff may pursue two theories to demonstrate sexual harassment under Title VII. *Id.* The first is a hostile work environment, and the second is *quid pro quo. Id.* When deciding which theory to apply, we determine whether the

plaintiff has suffered a "tangible employment action." *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000) (citation omitted). A tangible employment action is one where the employee suffers a significant change in employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009) (internal quotation marks and citation omitted). Saldivar is not required to prove an ultimate employment decision such as hiring or firing, but instead is only required to show she was discriminated against because of a protected characteristic, with respect to hiring, firing, compensation, or the term, conditions, or privileges of employment. *Hamilton v. Dallas County*, 79 F.4th 494, 506 (5th Cir. 2023).

If the plaintiff suffers a tangible employment action, then the court can apply a *quid pro quo* theory of sexual harassment. *Casiano v. AT&T Corp*., 213 F.3d 278, 283 (5th Cir. 2000). Next, "the court must determine whether the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment." *Casiano,* 213 F.3d at 283.

Saldivar does not allege she suffered a tangible employment action because of sexual harassment. Saldivar pleads no facts she suffered a tangible employment action prior to her making a report of contact against co-worker Jesse Sanchez on October 12, 2021. Dkt. No. 45, p. 5 ¶ 19 and p. 7, ¶ 35. (Stating any alleged tangible employment action began on November 19, 2021.)

Additionally, Saldivar does not claim any alleged tangible employment action resulted from her acceptance or rejection of a supervisor's sexual harassment. Saldivar alleges Sanchez, her alleged harasser, was not her supervisor. Dkt. 45, p. 12, ¶¶ 6-10. Therefore, this Court considers Saldivar's sexual harassment claim as a hostile work environment claim.

Even though her operative complaint does not claim *quid pro quo* harassment, Saldivar mentions *quid pro quo* in both her summary judgment motion and response but does not brief it. Instead, she points out she is not moving for summary judgment on the claim (Dkt. No. 47) and does not brief the issue in her response to the VA's motion for summary judgment on the sexual harassment as a hostile work environment claim (Dkt. No. 54).

Upon review of the record, it is evident that Saldivar failed to plead a harassment claim and has failed to address it in her summary judgment opposition. *Quid pro quo* harassment was only mentioned, never plead and not argued. Giving Saldivar the most liberal reading of her

pleadings does not put forth a quo pro quo harassment claim and even if it did, an issue raised in the complaint but ignored at summary judgment may be deemed waived. *See Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir.1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."); *see also Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002); *Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001); *Criner v. Tex. N.M. Power Co.*, 470 F. App'x 364, 368 (5th Cir. 2012).

**b. Saldivar's Cause of Action for Hostile Work Environment**

Saldivar brings a hostile work environment claim alleging she suffered sexual harassment through unwelcome physical and verbal contact by a fellow VA employee—Sanchez—based on her membership in an EEO protected class which affected her employment. Dkt. No. 45, pp. 12-13. She files for summary judgment arguing as an undisputed member of a protecting class (her gender) she was subjected to unwanted sexual touching and conduct by a fellow employee. Dkt. No. 47, pp. 8-10. The VA's response claims her self-serving evidence fails to allege severe or pervasive harassment, and that any alleged conduct was addressed by the VA. Dkt. No. 52, pp. 5-9. The VA brings a motion for summary judgment on the hostile work environment claim, arguing no genuine issue of material fact exists to proceed on this claim because Saldivar cannot prevail on the elements of her claim requiring harassment that affected her employment for which the VA failed to act. Dkt. No. 48, pp. 21-28. For the reasons set forth below, this Court recommends the denial of Saldivar's motion for summary judgment on this claim. Saldivar fails to make a *prima facie* hostile work environment claim; therefore, summary judgment should be granted in favor of the VA.

An employee can advance a claim for hostile work environment by demonstrating that she was "sexually or racially harassed in violation of Title VII" and "that the harassment created a hostile or abusive working environment[.]" *Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 455 (5th Cir. 2024) (quoting *Harvell v. Westward Commc'ns, LLC*, 433 F.3d 428, 434 (5th Cir. 2005)).

To establish a *prima facie* sexual harassment claim based on a hostile work environment, an employee "must show that (1) she belongs to a protected class; (2) she was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and

failed to take remedial action." *Saketkoo v. Admins. Of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022) (quoting *Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005)).

For harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of the victim's employment and create an abusive working environment." *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). In determining whether an environment is "hostile" or "abusive," courts look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). Simple teasing, offhand comments, sporadic use of offensive language, occasional jokes related to a claimant's protected trait, and isolated incidents (unless extremely serious) will generally not amount to discriminatory changes in the terms and conditions of employment. *See EEOC v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 461 (5th Cir. 2013).

A hostile work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *See Faragher*, 524 U.S. at 787; *see also Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263–64 (5th Cir. 1999). The objectionable conduct must affect the "conditions" of the alleged victim's employment. *Oncale v. Sundowner Offshores Svcs., Inc.*, 523 U.S. 75, 81 (1998). Title VII does not prohibit all verbal or physical harassment in the workplace. The statute is directed only to an employer's discrimination "because of" sex. *Indest*, 164 F.3d at 264. "[C]asual or isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment under the law." *Gearhart v. Eye Care Centers of Am., Inc.*, 888 F. Supp. 814, 825 (S.D. Tex. 1995). "Incidental, occasional or merely playful sexual utterances will rarely poison the employee's working conditions to the extent demanded for liability." *Indest*, 164 F.3d at 264.

The Fifth Circuit has also emphasized that the Supreme Court's cases regarding sexually hostile work environment are ones that involve allegations of "extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment." *See id.* (citing *Faragher*, 524 U.S. 775; *Ellerth*, 524 U.S. 742; *Oncale*, 523 U.S. 75; *Harris*, 510 U.S. 17; *Meritor*, 477 U.S. 57). Thus, the sexual harassment standard is a

"demanding" one to reach. *See Indest*, 164 F.3d at 264. As the Supreme Court explained, these high standards are required to ensure that Title VII does not become a "general civility code." *See Faragher*, 524 U.S. at 788.

It is undisputed by the parties that Saldivar belongs to a protected class. Dkt. No. 46, ¶ 64. Summary judgment evidence details four incidents of an unwelcome touch on Saldivar's arm described as a caress between March and November 2021. Dkt. Nos. 47-2, p. 2; 47-3, pp. 6-17. Saldivar articulates an October 2021 fifth incident when she was putting on a glove where Sanchez bent over, pretended to pull down his pants and stated "I'm ready" in a manner Salvidar took as mimicking a rectal exam. Dkt. No. 47-2, p. 1; 47-3, pp. 4-5.

The Supreme Court has noted that Title VII is not a "general civility code," and, therefore, Title VII does not prohibit "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788 (cleaned up). " '[S]imple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Id.* (internal citation omitted). Additionally, to prevail on her claim, Saldivar must prove that the harassment alleged affected a term, condition, or privilege of her employment. *Wallace*, 57 F.4th 221. "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *West*, 960 F.3d at 741–42 (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)). "[T]he work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.' " *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Faragher*, 524 U.S. at 787). To determine whether a work environment is objectively offensive, "courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

Saldivar alleges that Sanchez touched her arm on a few occasions and that Sanchez made an innuendo and bent over on one occasion. However, even if the summary judgment evidence demonstrated this occurred, the alleged incidents were infrequent. The allegations do not suggest that the conduct Saldivar was exposed to was so severe or pervasive it affected her employment.

*Harris*, 510 U.S. at 21. *See Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (finding that "the incidents in which [Plaintiff's coworker] touched [Plaintiff's] arm [from shoulder to wrist], although they occurred intermittently for a period of time, were not severe.").

Further, Saldivar's allegation where Sanchez bent over and made an innuendo could qualify as a mere offensive utterance or as a gender-related joke, and these are not situations prohibited by Title VII. *Faragher*, 524 U.S. at 788. Even if the incident is not a mere offensive utterance or a gender-related joke, Saldivar's description of the incident in the summary judgment evidence states that it was a single incident. Considering that even the sporadic use of abusive language does not establish a hostile work environment, these alleged incidents cannot be sufficient to prove there were "discriminatory changes in the 'terms and conditions' of [Plaintiff's] employment." *Id.*

Neither the touching nor crude conduct alleged by Saldivar create the required hostile work environment permeated with discriminatory conduct so severe it altered her employment, creating an abusive working environment. *Henry v. CorpCar Serv. Houston*, Ltd, 625 F. App's 607, 611 (5th Cir. 2015) (quoting *Harris v. Forklift Sys.,* 510 U.S. 17, 21 (1993)). Viewing the totality of the circumstances as required by this Court under *Harris*, the four arm touching incidents and one crude bending over do not rise to a hostile or abusive work environment. *Harris*, 510 U.S. at 23.

Additionally, review of the Letter of Expectation, which was later revoked, does not show that there was a discriminatory change in the terms and conditions of Saldivar's employment. Dkt. No. 49-8. Review of Saldivar's statements in her deposition concerning the "Fully Successful" mark she received on her annual performance evaluation show only that her work-related performance was evaluated. *See Kang*, 75 F. App'x at 976. (concluding that Plaintiff's allegations of receiving a poor performance evaluation, being "written up" by employer, and being criticized at a faculty meeting did "not satisfy [the hostile work environment] standard.").

Saldivar alleges that Sanchez's conduct interfered with her work performance because of her emotional distress. Dkt. No. 47-3. Saldivar describes her emotional distress and how others in her workplace witnessed her crying in her deposition. *Id.* Other coworkers also described seeing her crying at the workplace during their depositions. Dkt. No. 47-5. The summary judgment evidence presented does not show that this alleged created an abusive working environment.

Even when resolving the facts in Saldivar's favor as the nonmoving party to the VA's Motion for Summary Judgment, Saldivar cannot prevail on her hostile work environment claim because these facts are insufficient to establish that her work environment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *West*, 960 F.3d at 741–42 (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)). Consequently, there is no material dispute here, and, thus, no genuine issue of material fact. *Freedom From Religion Found., Inc.*, 49 F.4th at 950. Further, because Saldivar cannot establish her *prima facie* case, the VA is entitled to judgment as a matter of law regarding the hostile work environment claim. Saldivar fails to raise a genuine issue of material fact exists on harassment, which is required for her hostile work environment claim to prevail, therefore, her summary judgment claim fails.

Because the VA establishes Saldivar cannot prevail on her claim, summary judgment in their favor is appropriate. The Court considers Saldivar's alleged sexual harassment incidents in light of the Fifth Circuit ruling in *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195 (5th Cir. 2007) which concluded that the alleged harasser's conduct—rubbing the side of Russell's hand and her thigh on one occasion each, twice intimating that she wanted to move to New York City with Russell, once stating that she would not mind watching a movie in bed with Russell, and calling Russell "honey" or "babe" on numerous occasions—was neither severe nor pervasive. Saldivar's touching and conduct allegations are the type of infrequent contact found by the *Russell* holding not to be pervasive enough to sustain a hostile work environment requiring this Court to find summary judgment in favor of the VA as a matter of law.

Even if Saldivar prevails in her proof the harassment affected her employment, the VA provides summary judgment evidence that Saldivar cannot prevail on the final element, that they failed to promptly act.[1] Saldivar admits she did not report the March, June and September 2021

[1] Saldivar does not allege Sanchez was a supervisor. "[I]t matters whether a harasser is a 'supervisor' or simply a coworker." *Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 839 (5th Cir. 2015). "[W]here the alleged harasser is a supervisor with immediate or higher authority over the harassed employee," the employee need only prove the first four elements of a hostile work environment claim. *Holmes v. N. Texas Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 542 (N.D. Tex. 2018) (internal citations and quotation marks omitted). A "supervisor" for Title VII purposes is an employee "empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). "Tangible employment action" means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with

touching incidents to a supervisor, only to a co-worker. Dkt. No. 48-2, p. 22. After the crude gesture incident, Saldivar did file a Report on Contact on October 12, 2021. Dkt. No. 49-6. Thereafter her complaint was reviewed and a fact-finding report showing her allegations were unsubstantiated. Dkt. No. 49-3 and 49-7. [Taking] allegations seriously, [conducting] prompt and thorough investigations, and [immediately] implementing remedial and disciplinary measures based on the results of such investigations" constitutes sufficient remedial action. *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 640 (5th Cir. 2014) (quoting *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994)) (cleaned up). Because Saldivar cannot establish a *prima facie* case of hostile work environment discrimination the VA is entitled to summary judgment on Saldivar's hostile environment sexual harassment claim.

**c. Saldivar's Reprisal/Retaliation Claim**

Saldivar brings a retaliation claim she titles "Reprisal Under Title VII" alleging she engaged in a protected activity of which her management was aware, and she was adversely impacted following the protected activity during the time for which a retaliatory motive can be inferred. Dkt. No. 45, p. 13. She files for summary judgment arguing that after she filed her Report of Contact of Sanchez's behavior, the VA knew of her report and after the report she was issued a Letter of Expectation, was declined for three positions, was asked to find her own work coverage, and was denied a scholarship. Dkt. No. 47, pp. 18-22. She also claims after filing her EEOC complaint, her job description was changed to include additional duties and less time to complete the assignments. Dkt. No. 47, pp. 22-23. The VA's response claims all actions taken regarding Saldivar by the VA after the report were not adverse employment actions. Dkt. No. 52, pp. 9-12. The VA brings a motion for summary judgment on the retaliation claim, arguing no genuine issue of material fact exists to proceed on this claim. The VA argues Saldivar cannot prevail on the elements of her claim because none of Saldivar's described actions are non-retaliatory. Dkt. No. 48, pp. 21-28. For the reasons set forth below, this Court recommends the denial of Saldivar's motion for summary judgment on this claim. Saldivar fails to make a *prima facie* retaliation claim; therefore, summary judgment should be granted in favor of the VA.

---

significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 431. Mere "leadership responsibilities" like "the authority to assign [job responsibilities]" are insufficient to place an employee in the "unitary category of supervisors" with authority to cause a "significant change in employment status." *Matherne*, 624 F. App'x at 840 (quoting *Vance*, 570 U.S. at 432-33, 441).

The Fifth Circuit has held that "[t]o establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007) abrogated on other grounds by *Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). If the plaintiff makes this *prima facie* showing, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *Id.* at 557. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* If the employer meets this burden, then the plaintiff "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *Id.*

An employee has engaged in protected activity when they have " 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *See Thompson v. Somervell Cnty.*, 431 F. App'x 338, 341 (5th Cir. 2011) (quoting *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998)). An internal complaint of discrimination qualifies as protected activity. *Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 (2003), (considering employee's internal discrimination complaint a protected activity under Title VII)). However, internal complaints which do not refer to discrimination, or any other unlawful employment activity, are not protected activities. *Id.* at 329.

In the present case, Saldivar appears to argue that she engaged in "an activity protected by Title VII" when she filed her Report of Contact. This report was filed on October 12, 2021. Dkt. No. 47-6. Protected activity covers more than the filing of a formal complaint with the EEOC. However, even an internal complaint must reference discrimination or some other unlawful employment activity to qualify as a protected activity. *Rodriquez*, 540 F. App'x at 329. Review of Saldivar's ROC demonstrates she stated allegations that Sanchez touched her person and engaged in an inappropriate gesture describing the conduct as unprofessional and creating a hostile environment. Dkt. No. 47-6. While Saldivar does not put forth that the touching and gesture occurred because of her sex, the nature of the events suggests they were based on sex. For that reason, Saldivar's Report of Contact meets the first element of a *prima facie* case of retaliation,

engaging in a protected activity by making a claim of sexual harassment creating a hostile work environment.

To satisfy the second element, Saldivar must show that the VA took an adverse employment action against her after she engaged in the protected activity. "[I]t is illegal for employers to engage in 'materially adverse' conduct that would lead the reasonable employee to be dissuaded from making or supporting a charge of discrimination." *Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 430 (5th Cir. 2023) (citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (citation omitted)).

After Saldivar completed her ROC, it was investigated, and her allegations were found to be unsubstantiated on November 12, 2021. Dkt. No. 47-8, p. 5. A Letter of Expectation was then given to Saldivar by the VA stating she created a hostile work environment. Dkt. No. 47-18. This Letter of Expectation was withdrawn by the VA. Dkt. No. 47-19, p. 2. Therefore, there is no adverse employment action for the Court to review on the first letter of expectation dated November 19, 2021. A second letter of expectation was issued to Saldivar by the VA on December 17, 2021, which lists no adverse employment action. Dkt. No. 47-21. Therefore, Saldivar fails to put forth a genuine issue of material fact regarding any adverse employment action for the letters of expectation.

Additionally, after Saldivar filed her EEO Complaint on April 26, 2022, she alleges management instructed her colleagues not to speak with her or ask her questions and denied her a scholarship. Dkt. No. 47-3. Saldivar alleges that on April 29, 2022, Benavidez, her supervisor, changed her position description to include additional duties and less time to complete assignments. Dkt. No. 47-3. *Hamilton* requires Saldivar to prove an adverse employment action with respect to hiring, firing, compensation, or the term, conditions, or privileges of employment. *Hamilton,* 79 F.4th at 506. Saldivar presents no summary judgment evidence that the instruction from management regarding interaction was an adverse employment action or the denial of the scholarship was a reprisal action. Furthermore, her change in job description fails to allege an adverse employment action. See *Hart v. Life Care Ctr. of Plano*, 243 F. App'x 816, 818 (5th Cir. 2007) (plaintiff assigned more difficult tasks than Hispanic coworkers did not suffer adverse employment action); *Benningfield v. City of Houston*, 157 F.3d 369, 376–377 (5th Cir. 1998) (being assigned an unusually heavy workload involves administrative matters and is not adverse employment action); *Wesley v. Yellow Transp., Inc.*, No. 3:05-CV-2266-D, 2008 WL

5220562, at *2 (N.D. Tex. Dec. 12, 2008) (plaintiff assigned heavier workload than Caucasian coworkers did not suffer adverse employment action). Therefore, her summary judgment fails to prove any genuine issue of material facts to satisfy this element with this conduct. Therefore, Saldivar cannot establish the second prong of her retaliation claim based on her contention that she was assigned a heavier workload.

Thereafter, several of Saldivar's applications for different positions in the VA were denied on December 7, 2021, February 8, 2022, and February 28, 2022. Dkt. No. 46, ¶¶ 37, 42 and 43. Saldivar alleges her application for GS-9 Administrative Officer Position was declined as a reprisal for complaining of Sanchez' conduct. Dkt. No. 47-3. Saldivar appears to frame these allegations as "adverse employment actions." *Id.* Viewing these facts in the light most favorable to Saldivar, the amalgamation of these actions could possibly dissuade a reasonable employee from exercising their right to make or support a charge of discrimination in the workplace. However, to establish a *prima facie* case of retaliation, Saldivar must meet the third element, or she must meet her burden to show that a causal connection exists between the protected activity (filing the ROC) and the adverse employment actions. *McCoy*, 492 F.3d at 556–57. To do so, Saldivar "must produce at least some evidence that the decisionmakers had knowledge of [the] protected activity." *Manning*, 332 F.3d at 883 (internal citation omitted). "If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity." *Id.*

In the present case, even considering Saldivar's ROC as the protected activity she engaged in and received retaliation for, she does not present sufficient summary judgment evidence for this Court to conclude that there was a causal connection between the alleged activity and the employment action. It is undisputed that Saldivar's applications for different positions were denied. Although Saldivar frames these denials as an act of retaliation in her deposition, the Court's review of these denials finds the most concerning part of Saldivar's series of denied applications and scholarship are the timing because Saldivar's applications were all denied after she filed her ROC. However, timing alone cannot establish that the decisionmakers who denied her application knew about her protected activity. *See Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471–72 (5th Cir.2002) (finding "a five-month period between the protected activity and the adverse employment action insufficient to establish a causal link."). Additionally, in her deposition,

Saldivar does not provide any information on who made the decision to deny her applications, so she does not show that those who denied her applications knew she had engaged in protected activity. Dkt. No. 49-2, pp. 15-27.

For these reasons, Saldivar does not present summary judgment evidence sufficient to establish this last element of a retaliation claim. Saldivar cannot establish a causal connection between the alleged adverse employment action and her claimed protected activity. The VA puts forth evidence that the individuals considering Saldivar for these jobs did not know of Saldivar's protected activity. Dkt. No. 1, pp. 15- 67. Therefore, the VA is entitled to summary judgment on the retaliation claim as Saldivar fails to raise a genuine issue of material fact to establish a *prima facie* case.

## VII. Recommendation

It is RECOMMENDED that the Court

(1) DENY Saldivar's Motion for Summary Judgment (Dkt. No. 47);

(2) GRANT the VAs' Motion for Summary Judgment (Dkt. No. 48); and

(3) DISMISS Saldivar's complaint with prejudice.

There exists no genuine issue of material fact that Saldivar can prevail on her claims, and the VA is entitled to summary judgment on all causes of action.

## VIII. Notice to the Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with United States District Judge Fernando Rodriguez, Jr. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). This Report and Recommendation shall serve as notice of the Plaintiff's procedural defaults, and the objection period shall serve as opportunity to respond to these defects. *Alexander v. Trump*, 753 F. App'x 201, 208 (5th Cir. 2018).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a *de novo* review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a *de novo* review of the record, the parties may not attack those findings on appeal,

except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on January 27, 2026.

Karen Betancourt

Karen Betancourt
United States Magistrate Judge